**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHARLES SCHWESTER, <br><br>     Plaintiff, <br><br>  v. <br><br> BOROUGH OF FAR HILLS, *et al.*, <br><br>     Defendants. | Civil Action No. 25-00007 (GC) (RLS) <br><br> **OPINION** |

**CASTNER, District Judge**

     **THIS MATTER** comes before the Court upon Defendants Borough of Far Hills, Kevin Welsh, Sheila Tweedie, Mary Chimenti, Michael DeCarolis, and Dorothy Hicks' Motion to Dismiss Plaintiff Charles Schwester's Complaint pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6).  (ECF No. 3.)  Plaintiff opposed (ECF No. 4), and Defendants replied (ECF No. 5).  The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, the Motion to Dismiss is **GRANTED**.

## I.    **BACKGROUND**[1]

     Since becoming a resident of the Borough of Far Hills in 2018, Plaintiff has "attended all of the meetings of the Borough Council . . . and Far Hills Planning Board."  (ECF No. 1 ¶ 16.) During these meetings, Plaintiff and other attendees have "regularly made their views and concerns

---

[1]     On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

known by voicing them" through the five-minute public comment portion of the meetings.[2]  (*Id.* ¶¶ 17, 19.)  This case stems from two incidents: (1) an altercation at a Borough Council meeting between Plaintiff and several Board Council members which ultimately led to Plaintiff's arrest, and (2) an issue with Plaintiff's primary election ballot for a seat on the Borough Council.  (*Id.* ¶ 1.)

As relevant here, in February 2022, Far Hills approved the construction of a new housing development on a 42-acre tract of land, which would consist of 105 townhomes and 29 apartments and would address the Borough's affordable housing obligations.  (*Id.* ¶¶ 21-22.)  Pulte Homes of New Jersey was the proposed contractor for the development, while Melillo Equities, the owner of the 42-acre tract of land, would own and lease the townhomes and apartments built on the property.  (*Id.* ¶ 23.)

Plaintiff attended multiple Borough Council meetings in which the new development was discussed.  (*Id.* ¶ 24.)  During these meetings, Plaintiff "made various suggestions, including that Far Hills should work with third parties experienced in building affordable housing developments to fully understand and consider all construction and financial options so that it could opt for the alternative that would best benefit Far Hills."  (*Id.*)  The Complaint alleges that when Plaintiff "raised questions regarding the [d]evelopment and criticized Borough Council members' positions, the public comment portion of the . . . meetings often became heated and rife with disagreement."  (*Id.* ¶ 25.)  Some of the concerns Plaintiff raised include environmental impacts associated with the development, increase in traffic, and "personal and professional relationships with the builder of the [d]evelopment" being placed ahead of "the concerns and wellbeing of the

---

[2]    "During Borough Council meetings, attendees who wished to speak were generally provided with a five-minute allotment of time to do so."  (ECF No. 1 ¶ 19.)

citizens of Far Hills." (*Id.* ¶ 26.) The Complaint further asserts that Plaintiff "consistently questioned the fiscal motives of Borough Council members." (*Id.* ¶ 18.)

On February 13, 2023, the Borough Council, comprised of Kevin Welsh, Sheila Tweedie, and Mary Chimenti, scheduled a vote on an ordinance related to the new development. (*Id.* ¶ 51.) According to the Complaint, "[w]hen the Borough Council learned that such a large number of citizens planned on attending the meeting, the vote on the proposed ordinance was removed from the agenda." (*Id.* ¶ 52.) Despite the vote being removed from the agenda, the meeting still occurred on February 13, 2023.[3] (*Id.* ¶ 53.)

Approximately thirty minutes into the meeting, Plaintiff requested that Michael DeCarolis, the Chief of Police for Far Hills, not interrupt comments being made by attendees on the ordinance issue and specifically stated, "there's no violence here, Michael." (*Id.* ¶ 54.) One of the attendees spoke for just under five minutes and was not given a four-minute warning that her time was going to expire. (*Id.* ¶ 55.) During Plaintiff's public comments period, Dorothy Hicks, the Borough administrator for Far Hills, notified Plaintiff at four minutes that he had one minute left. (*Id.* ¶ 56.) In response to Hicks' comment, Plaintiff stated: "Shhh. You're not going to shut me off. . . . You can keep your mouth shut. I don't want to hear from you." (ECF No. 3-1, Ex. C.) The council members immediately admonished Plaintiff, but nevertheless permitted Plaintiff to continue speaking. (*Id.*) After relaying to Plaintiff that his comments related to a report associated with the new development—an issue that the Borough Council was not addressing at this particular

---

[3]     The Court is in receipt of the recording and transcript of the February 13, 2023 meeting, which was submitted with Defendants' Motion. (*See* ECF No. 3-1, Exs. B & C.) The Court takes judicial notice of the recording. *See Brito v. LG Elecs. USA, Inc.*, Civ. No. 22-5777, 2023 WL 2675132, at *1 n.3 (D.N.J. Mar. 29, 2023) ("A court may [] consider any document integral to or relied upon in the Complaint and take judicial notice of matters of public record."). The Court has reviewed the recording. The Plaintiff also relies on the recording. (*See* ECF No. 4 at 6.)

meeting—council members indicated that Plaintiff's tone was "aggressive and uncalled for," to which Plaintiff responded, "too bad." (*Id.*) The following exchange then ensued:

<blockquote>

Plaintiff: [I]t's about time somebody told you who you were. It's not gonna end here. Trust me. The storm is coming. You're going down, all three of you's.

Council: Is that a threat?

. . . .

Plaintiff: You're going down, politically you're going down. I'm sick of this with you three.

</blockquote>

(*Id.*)

Later in the meeting, the Borough Council permitted Plaintiff to speak again. (ECF No. 1 ¶ 62.) Plaintiff's comments spanned approximately three and a half minutes, and Hicks did not tell Plaintiff that his time was going to run out soon. (*Id.*) After the meeting was adjourned and moved into executive session, and as attendees were walking out Plaintiff stated the following to the Borough Council: "Thank you for being Far Hills patriots. You three, you're going . . . to be exposed and . . . the storm is coming, trust me. The storm is coming. You're going down." (ECF No. 3-1, Ex. C; ECF No. 1 ¶¶ 65-66.) The Borough Council then discussed whether Plaintiff's comments were a threat. (ECF No. 3-1, Ex. C.) One of the members of the Borough Council states "this is fun" and then starts laughing. (*Id.*)

According to the Complaint, Chief DeCarolis approached the Borough Council and asked if they felt threatened. (ECF No. 1 ¶ 67.) Chief DeCarolis then arrested Plaintiff shortly after and transported him to the Far Hills Police Station for processing. (*Id.* ¶ 70.) As alleged in the Complaint, "Far Hills and DeCarolis did not routinely arrest citizens who attended Borough Council meetings and spoke during the public comments portions of these meetings even if the comments were impassioned, controversial, or provocative." (*Id.* ¶¶ 123, 136.) Nor did "Far Hills

4

and DeCarolis . . . routinely charge [citizens attending these meetings] with harassment." (*Id.* ¶ 124.)

Once at the police station, Plaintiff was searched, photographed, and ultimately detained for approximately one hour. (*Id.* ¶ 71.) The Complaint further asserts that Plaintiff was handcuffed while in custody, although it is unclear at which points he was handcuffed. (*Id.*)

On February 14, 2023, Plaintiff was charged with harassment in violation of N.J. Stat. Ann. § 2C:33-4(a), a petty disorderly persons offense. (*Id.* ¶ 74.) The criminal complaint provides: "With purpose to harass another, make or cause to be made a communication or communications in offensively coarse language, specifically by advising Far Hills Borough Council Officials that '[y]ou're all going down, all three of ya's.'" (*Id.*) The Affidavit of Probable Cause, a component of the criminal complaint, was left blank. (*See* ECF No. 1 at 41-42.[4])

Following the charges, Plaintiff filed a motion challenging the probable cause for his arrest. (ECF No. 1 ¶ 80.) The State opposed Plaintiff's motion, and Chimenti and Tweedie both submitted emails in support of the prosecution. (*Id.* ¶ 81.) According to the Complaint, Tweedie's email "confirm[ed] her belief that the comments [Plaintiff] made at the February 13, 2023 Borough Council meeting stemmed from her vote 'to not support a candidate that he wanted to see elected to Council.'" (*Id.* ¶ 83.) The former mayor of Far Hills, Paul Vallone, also wrote to the municipal court, but in support of Plaintiff:

> [Plaintiff has been] a resident of Far Hills for [some time,] and has attended nearly every Council meeting over the last 4 years. He has appeared before me nearly 100 times to express his pleasure or displeasure with [a]genda [i]tems that [affect] Far Hills as have many of our residents. At no time has he ever charged the [dais], thrown items at myself or any of the 6 council members, nor has he

---

[4]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

ever [p]hysically or [v]erbally threatened to physically harm myself
or the Council members that I can recall in any way.

(*Id.* ¶ 84.)  The Complaint also asserts that Vallone "hinted in his letter . . . that [Plaintiff] was being singled out, writing that if the Far Hills police 'were to arrest all who spoke sharply and briskly, half of Far Hills would be before you.'"  (*Id.* ¶ 85.)

Ultimately, the municipal court determined that Chief DeCarolis did have probable cause to arrest Plaintiff.  (*Id.* ¶ 90.)  On October 7, 2023, the State submitted a letter to the municipal court judge indicating that it intended to dismiss the harassment charge on the grounds that Plaintiff's comments at the February 13, 2023 meeting were political speech.  (*Id.* ¶ 92.)  The State reiterated this position at a hearing held the same day and moved to dismiss the harassment charge.  (*Id.* ¶ 93.)  On October 8, 2024, the municipal court "expunged the harassment charge from [Plaintiff's] record."  (*Id.* ¶ 94.)

Aside from the altercation on February 13, 2023, the Complaint asserts that following Plaintiff's participation in the various Borough Council meetings addressing the new development, Far Hills citizens urged Plaintiff to run for a seat on the Borough Council.  (*Id.* ¶ 30.)  Plaintiff decided to run and made it public knowledge before 2023 that he would run for one of three open seats in the next primary election scheduled for June 6, 2023.  (*Id.* ¶¶ 30-31.)  Plaintiff was challenging Tweedie for her seat on the Borough Council.  (*Id.* ¶ 100.)  According to the Complaint, "Hicks, Welsh[,] and Chimenti were known supporters of Tweedie and her reelection campaign."  (*Id.*)

On March 27, 2023, the day candidates were required to submit nominating petitions to run for a Borough Council seat, Plaintiff submitted his petition to Hicks.  (*Id.* ¶¶ 32-33.)  Hicks found a defect in Plaintiff's petition but permitted him to correct the defect.  (*Id.* ¶¶ 34-35.)  According to the Complaint, after Plaintiff corrected the defect in his petition and Hicks informed

him that the petition was acceptable, Hicks sent Plaintiff a letter advising him that there was another defect with the petition; Hicks, did not permit Plaintiff to correct the defect as the deadline passed.  (*Id.* ¶¶ 39-40.)  This issue was eventually corrected after a state court determined that Plaintiff would be permitted to correct the additional defect.  (*Id.* ¶¶ 41-49.)  Ultimately, Plaintiff finished second in the primary election and Tweedie finished third.  (*Id.* ¶ 50.)

Moreover, the Complaint indicates that Plaintiff ran unopposed in the general election and won a seat on the Borough Council.  (*Id.* ¶ 95.)  Plaintiff was sworn in for his term on January 2, 2024.  (*Id.* ¶ 96.)

On January 2, 2025, Plaintiff filed suit against the Borough of Far Hills, Kevin Welsh, Sheila Tweedie, Mary Chimenti, Michael DeCarolis, and Dorothy Hicks for violations of his constitutional rights under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act (NJCRA), N.J. Stat. Ann. § 10:6-1 *et seq.*[5]  (ECF No. 1.)  The Complaint asserts nine counts: a First Amendment violation (free assembly) (Count 1); Article I, Section 18 violation of the New Jersey Constitution (free assembly) (Count 2); a First Amendment violation (retaliation) (Count 3); Article I, Section 6 violation of the New Jersey Constitution (retaliation) (Count 4); a Fourth Amendment violation (Count 5); Article I, Section 7 violation of the New Jersey Constitution (free assembly) (Count 6); a Fourteenth Amendment violation (Count 7); Article I, Section 1 violation of the New Jersey Constitution (Count 8); and malicious prosecution (Count 9).  (*Id.*)

Defendants challenge the Complaint in its entirety as to the Borough of Far Hills.[6] Defendants challenge all counts asserted against Chief DeCarolis, Counts 3-9.  As to Welsh,

---

[5]    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

[6]    Counts 1 through 9 are asserted against the Borough of Far Hills.  (ECF No. 1.)  Counts 3 through 9 are asserted against Chief DeCarolis.  (*Id.*)  Counts 1 through 4 and 7 through 9 are

Tweedie, and Chimenti, Defendants only challenge Counts 3 and 4.  Defendants do not challenge any claims as to Hicks.  (ECF No. 3-2 at 7-10.)

## II.   <u>LEGAL STANDARD</u>

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'"  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dir. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements."  *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim."  *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605

─────────────

asserted against Walsh, Tweedie, Chimenti.  (*Id.*)  Count 1, 2, 7, and 8 are asserted against Hicks. (*Id.*)

F.3d 223, 230 (3d Cir. 2010).  A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.    DISCUSSION

### A.  *Monell* Claim

Defendants argue that Plaintiff's claims against the Borough of Far Hills should be dismissed as Plaintiff fails to allege a *Monell*[7] claim.  A municipality "can act only through people—its officers and employees."  *Fernandes v. City of Jersey City*, Civ. No. 16-07789, 2017 WL 2799698, at *12 (D.N.J. June 27, 2017).  As a result, "liability under [§] 1983 'may not be proven under the *respondeat superior* doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)); *see Monell*, 436 U.S. 690-91; *Brinson v. City of Newark*, Civ. No. 20-9606, 2020 WL 6268696, at *4 (D.N.J. Oct. 26, 2020).

As the United States Court of Appeals for the Third Circuit has recognized, "a § 1983 claim against a municipality may proceed in two ways."  *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Est. of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019)).  To show municipal liability, "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, . . . or that they were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice[.]'"  *Id.* (quoting *Roman*, 914 F.3d at 798).  Despite the existence of a "close relationship between policy-and-custom claims and failure-or-inadequacy claims," the Third Circuit has made clear that "the avenues remain distinct: a plaintiff alleging that a policy or custom led to his or her injuries must be referring to an

---

[7]        *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

unconstitutional policy or custom," while "a plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Id.* at 106.

In this case, Plaintiff proceeds under the theory of deliberate indifference for failure to train. (ECF No. 4 at 7-11.) "[D]eliberate indifference requires 'proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Hightower v. City of Philadelphia*, 130 F.4th 352, 357 (3d Cir. 2025) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). Deliberate indifference claims are emblematic of a failure to train, supervise, and discipline claim. *See Brinson*, 2020 WL 6268696, at *4. A plaintiff can sufficiently plead deliberate indifference by showing that "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011). Importantly, deliberate indifference is a "stringent standard of fault." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014); *see Bernal v. Borough of Bogota*, Civ. No. 22-05044, 2023 WL 5950398, at *5 (D.N.J. Sept. 13, 2023) ("A 'plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" (quoting *Brown*, 520 U.S. at 404)).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Brown*, 520 U.S. at 409); *Brinson*, 2020 WL 6268696, at *4 (noting that to "satisfy the *Monell* requirement of actual municipal involvement or culpability, it requires 'deliberate indifference' to constitutional rights and a degree of

foreknowledge, generally if not always based on a pattern of past incidents, that a constitutionally perilous situation will occur"). However, "in certain situations, the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Thomas*, 749 F.3d at 223 (citation modified); *see City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989) (noting that city policymakers "know to a moral certainty that their police officers will be required to arrest fleeing felons," and therefore "the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights") (citation modified). These special situations are referred to as "single-incident," and depend "on '[t]he likelihood that the situation will recur and the predictability that an [official] lacking specific tools to handle that situation will violate citizens' rights.'" *Id.* at 223-24 (quoting *Brown*, 520 U.S. at 409). The single-incident theory has a "narrow" reach. *Id.* at 224.

A plaintiff must separately demonstrate causation to sustain a failure-to-train claim. *Id.* at 222. "To satisfy the causation requirement, 'the identified deficiency in [the] training program must be closely related to the ultimate injury.'" *Martinez v. City of Absury Park*, Civ. No. 20-8710, 2021 WL 1343837, at *6 (D.N.J. Mar. 5, 2021) (quoting *City of Canton*, 489 U.S. at 391).

Here, Plaintiff asserts in his moving papers that he has properly asserted a deliberate indifference claim based on the allegations involving (1) the rejection of his nominating petition for Borough Council, and (2) the February 13, 2023 Borough Council meeting where Plaintiff was arrested. (ECF No. 4 at 9-10.) More specifically, Plaintiff asserts that "the Borough knew that its employees would confront situations in which they received nominating petitions and were required to assess their validity – or – were called upon to control public meetings during which

11

contentious topics were discussed," and that "[t]hese situations are even more critical when, as here, these employees confront citizens who are political rivals of their associates."  (*Id.* at 10.) Plaintiff also asserts that "these situations required the municipal employees to exercise judgment and discretion, or make a 'difficult choice,'" and that "because of the choices made by these municipal employees, [Plaintiff's] constitutional rights were violated."  (*Id.* at 10-11.)

Even accepting the allegations in the Complaint as true and drawing all inferences in favor of Plaintiff, the Court finds that the allegations in the Complaint are too threadbare and conclusory to meet the "stringent standard of fault" associated with a claim for failure to train.  *Thomas*, 749 F.3d at 223.  Although Plaintiff alleges that "the Borough knew that its employees would confront situations in which they received nominating petitions and were required to assess their validity – or – were called upon to control public meetings during which contentious topics were discussed," (ECF No. 4 at 9-10), the Complaint is devoid of any factual allegations indicating a pattern of allegedly similar constitutional violations, which is "'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  *Connick*, 563 U.S. at 62 (quoting *Brown*, 520 U.S. at 409); *Glaesener v. City of Jersey City*, Civ. No. 19-cv-18089, 2021 WL 4206297, at *7-8 (D.N.J. Sept. 15, 2021) (dismissing the plaintiff's *Monell* claims, including First Amendment retaliation, against Jersey City because the plaintiff could not allege "a pattern of allegedly similar constitutional violations").  Indeed, the Complaint does not indicate that Welsh, Tweedie, Chimenti, Hicks, or Chief DeCarolis engaged in similar conduct with other individuals, and therefore any theory that a pattern of similar constitutional violations amounted to deliberate indifference by the Borough of Far Hills is unavailing.  (*See, e.g.*, ECF No. 1 ¶¶ 123-25 (alleging that other citizens were not routinely arrested at Borough Council meetings).)  *See also Luna Garcia v. N. Brunswick Pub. Sch.*, No. 20-1031, 2020 WL 5201343, at *4 (D.N.J. Sept. 1, 2020)

(rejecting deliberate indifference claim because "the [c]omplaint [did] not indicate that teachers at [the school] had previously punished other students in a similar manner, nor that [the] [d]efendant North Brunswick BOE knew about any punishment of [the plaintiff] or other students").

Nor does the Court find that Plaintiff has alleged facts to permit it to infer that "the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Thomas*, 749 F.3d at 223 (collecting single-incident cases that show the narrow scope of these claims); *see City of Canton*, 489 U.S. at 390 n.10; *Gaymon v. Esposito*, Civ. No. 11-4170, 2013 WL 4446973, at *15 (D.N.J. Aug. 16, 2013) (dismissing *Monell* claim because the plaintiffs "fail[ed] to state facts supporting  their deliberate indifference based either on a pattern of constitutional violations of which they had notice or on a 'single-incident' liability theory").

Therefore, Counts 1 through 9 of the Complaint, as asserted against the Borough of Far Hills, are dismissed.  *See Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); *City of Canton*, 489 U.S. at 392 ("In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident.").

### B.  First Amendment (Retaliation)[8]

Defendants Welsh, Tweedie, Chimenti, and Chief DeCarolis argue that Counts 3 and 4 of

---

[8]        Because courts in this District have "repeatedly interpreted NJCRA analogously to § 1983," the Court will analyze Plaintiff's NJCRA claims "through the lens of § 1983." *Bussinelli v. Twp. of Mahwah*, Civ. No. 23-21519, 2025 WL 1112831, at *3 (D.N.J. Apr. 15, 2025) (quoting *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011)); *see Palardy v. Twp. of Millburn*, 906 F.3d 76, 80 (3d Cir. 2018) (noting that "The Free Speech Clause contained within the New Jersey Constitution 'is generally interpreted as co-extensive with the First Amendment,' so the analysis of [a plaintiff's] state free speech claim is identical to its federal counterpart."

the Complaint fail to state a claim for First Amendment retaliation because Plaintiff was arrested for threatening behavior and not protected speech.  (ECF Nos. 3-2 and 5.)  In response, Plaintiff asserts that he was arrested for his political speech.  (ECF No. 4.)

To prevail on a § 1983 First Amendment retaliation claim, "the plaintiff must prove that (1) he engaged in 'constitutionally protected conduct,' (2) the defendant engaged in 'retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights,' and (3) 'a causal link [existed] between the constitutionally protected conduct and the retaliatory action.'"  *Palardy v. Twp. of Millburn*, 906 F.3d 76, 81 (3d Cir. 2018) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)).  "The first element is an issue of law; the second and third are questions of fact."  *Fernandes v. City of Jersey City*, Civ. No. 16-07789, 2017 WL 2799698, at *9 (D.N.J. June 27, 2017) (citing *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001)).

Plaintiff alleges that he was arrested after the February 13, 2023 Borough Council meeting for his "political comments" regarding "ongoing concerns with both the development and the ordinance that did not align with the position of certain members of the Borough Council."  (ECF No. 4 at 13-14; ECF No. 1 ¶¶ 50, 53, 55-59, 74-76.)  As courts have recognized, "[a] core purpose of the First Amendment is to protect speech on matters of public interest," and "[t]here is no question that speech by a private citizen concerning matters of public concern, and especially governmental affairs, is constitutionally protected conduct."  *Fernandes*, 2017 WL 2799698, at *9; *see Mills v. State of Alabama*, 384 U.S. 214, 218 (1966) ("[T]here is practically universal

---

(quoting *Twp. of Pennsauken v. Schad*, 160 N.J. 156, 733 A.2d 1159, 1169 (1999))); *See also N.J. Chinese Cmty. Ctr. v. McAleer*, Civ. No. 21-08320, 2025 WL 1564869, at *8 n.5 (D.N.J. June 3, 2025) ("The NJCRA was modeled after § 1983, and courts in New Jersey have consistently looked at claims under the NJCRA 'through the lens of § 1983[.]'" (quoting *Wronko v. Howell Twp.*, Civ. No. 3:17-CV-1956, 2018 WL 516055, at *6 (D.N.J. Jan. 23, 2018))).

agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs.") Moreover, courts "afford heightened protection to speech given in public forums, such as public meetings." *Fernandes*, 2017 WL 2799698, at *9 (citing *Besler v. Bd. of Ed. of W. Windsor-Plainsboro Reg'l Sch. Dist.*, 993 A.2d 805, 819 (N.J. 2010)). However, Defendants argue that Plaintiff's First Amendment rights were not violated because he was arrested in response to the threats he made throughout the February 13, 2023 meeting. (ECF No. 3-2 at 9, 21-22; ECF No. 5 at 13.) For Plaintiff's threats to fall beyond the scope of constitutionally protected speech, the Court would need to find that Plaintiff's comments amount to "true threats."

Drawing all reasonable inferences in favor of Plaintiff at this early stage in the litigation, the Court cannot conclude that his comments amount to "true threats." *See Counterman v. Colorado*, 600 U.S. 66, 74 (2024) ("True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003))); *Watts v. United States*, 394 U.S. 705, 708 (1969) ("[P]olitical hyperbole" is not a true threat). As the Third Circuit has held, "not all violent speech automatically falls outside of the First Amendment's protective shroud." *Fenico v. City of Philadelphia*, 70 F.4th 151, 165 (3d Cir. 2023); *see also Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 746 (9th Cir. 2021) ("Even a statement that appears to threaten violence may not be a true threat if the context indicates that it only expressed political opposition or was emotionally charged rhetoric."). Based solely on the allegations in the Complaint and a recording of the February 13, 2023 meeting, and without the benefit of any discovery, it would be premature for the Court to determine whether such comments fall outside the scope of constitutionally protected speech. *See also Jackson v. Irwin*, Civ. No. 22-352E, 2024 WL 2883226, at *3-4 (W.D. Pa. Jan. 4, 2024), *adopting report and recommendation*, 2024 WL 2716858 (W.D. Pa. May 28, 2024) (declining to resolve whether the plaintiff's speech

constituted a true threat at the motion to dismiss stage).  Therefore, Plaintiff has alleged enough facts to satisfy the first element for purposes of a motion to dismiss.

As to the second element, the Third Circuit has recognized that the test for "determining whether an action is treated as retaliation is whether it is 'sufficient to deter a person of ordinary firmness from exercising his constitutional rights.'"  *Miller v. Mitchell*, 598 F.3d 139, 152 (3d Cir. 2010) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003)).  Because there "is no doubt a prosecution meets this test," Plaintiff's arrest and subsequent prosecution for harassment pursuant to N.J. Stat. Ann. § 2C:33-4(a) is enough to deter others from exercising their free speech rights. *Id.*; *see Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out.").  Therefore, the second element is satisfied.

As for the final element, Plaintiff must allege a causal link between the constitutionally protected conduct and the retaliatory action.  To assert a retaliatory arrest claim, a plaintiff must plead and prove the absence of probable cause for the arrest.  *Morales v. Maxwell*, 600 F. Supp. 3d 497, 519 (D.N.J. 2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019)).  If a plaintiff does sufficiently allege an absence of probable cause, courts will then apply the test announced in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 (1977).  *Nieves*, 587 U.S. at 404.  Under *Mt. Healthy*, "[t]he plaintiff must show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation."  *Id.* (quoting *Lozman v. Riviera Beach*, 585 U.S. 87, 97)).

However, the United States Supreme Court has recognized a narrow exception to the probable cause requirement for retaliatory arrest claims. In *Nieves*, the Supreme Court held that "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407. This exception "provides an objective inquiry that avoids the significant problems that would arise from reviewing police conduct under a purely subjective standard," and "[b]ecause this inquiry is objective, the statements and motivations of the particular arresting officer are 'irrelevant' at this stage." *Id.* As a result, "[a]fter making the required showing, the plaintiff's claim may proceed in the same manner as claims where the plaintiff has met the threshold showing of the absence of probable cause." *Id.* at 408-09.

Here, Plaintiff asserts that the *Nieves* exception applies. In support of this assertion, Plaintiff alleges that: (1) since becoming a resident of Far Hills in 2018, Plaintiff has attended all Borough Council meetings; (2) Plaintiff regularly raised concerns to the Borough Council about fiscal motives of the council members, the development project at issue in this case, and other issues related to Far Hills; (3) Plaintiff announced his candidacy for the Borough Council prior to the February 13, 2023 meeting where he was arrested; (4) Plaintiff's comments that prompted his arrest were that "[t]he storm is coming" and "[y]ou're going down," which prompted laughter from one of the council members; (5) other individuals that made "impassioned, controversial, or provocative" comments at Borough Council meetings Plaintiff attended were not arrested nor charged with harassment; (6) the letter from Vallone that indicated Plaintiff never made threatening comments even when he expressed displeasure with the Borough Council; and (7) the letter from Vallone that also suggested "half of Far Hills" would already be arrested if they spoke "sharply and briskly." (ECF Nos 1 & 4.)

Based on these allegations, the Supreme Court's recent decision in *Gonzalez v. Trevino*, 602 U.S. 653 (2024) is instructive. In *Gonzalez*, the plaintiff, a city councilwoman, was gathering signatures for a petition seeking the removal of the city manager. *Id.* at 655. The plaintiff was eventually charged with a Texas anti-tampering statute—which prohibited a person from intentionally removing a governmental record—after the petition was found in her personal binder. *Id.* at 656. After the charges were dismissed, the plaintiff brought suit under 42 U.S.C. § 1983, alleging that she "was arrested in retaliation for her role in organizing the petition for [the city manager's] removal and that the defendants [(*i.e.*, one of her colleagues and law enforcement officials)] therefore violated her First Amendment rights." *Id.* As part of her claim, the plaintiff "alleged that she had reviewed the past decade's misdemeanor and felony data . . . and that her review had found that the Texas anti-tampering statute had never been used in the county 'to criminally charge someone for trying to steal a nonbinding or expressive document.'" *Id.* at 657. The plaintiff's search "turned up 215 felony indictments, and she characterized the typical indictment as involving accusations of either using or making fake government identification documents." *Id.* (citation modified). The defendants subsequently moved to dismiss the plaintiff's complaint. *Id.* The trial court denied the motion after finding that the plaintiff's claim fell within the *Nieves* exception. *Id.* The Supreme Court agreed with the trial court. *Id.* at 658.

The Supreme Court determined that "[t]o fall within the [*Nieves*] exception, a plaintiff must produce evidence to prove that his arrest occurred in such circumstances," and "[t]he only express limit [] placed on the sort of evidence a plaintiff may present for that purpose is that it must be objective in order to avoid 'the significant problems that would arise from reviewing police conduct under a purely subjective standard.'" *Id.* (quoting *Nieves*, 587 U.S. at 407). In finding that the plaintiff had alleged sufficient facts at the motion to dismiss stage, the Supreme Court

18

stated that the plaintiff's review of the charges associated with the Texas law was a "permissible type of evidence because the fact that no one has ever been arrested for engaging in a certain kind of conduct—especially when the criminal prohibition is longstanding and the conduct at issue is not novel—makes it more likely that an officer has declined to arrest someone for engaging in such conduct in the past." *Id.*

Based on the Supreme Court's decision in *Gonzalez*, the Court finds that Plaintiff has failed to allege such objective evidence to fall within the narrow scope of the *Nieves* exception. The allegations that most support Plaintiff's assertion that the *Nieves* exception applies are that (1) other individuals that made "impassioned, controversial, or provocative" comments at Borough Council meetings Plaintiff attended were not arrested nor charged with harassment, and (2) the Vallone letter suggested "half of Far Hills" would already be arrested if they spoke "sharply and briskly" like Plaintiff. (ECF Nos 1 & 4.) But these assertions are simply too vague and conclusory to meet the circumscribed exception under *Nieves*. Indeed, courts routinely find that similar allegations do not satisfy the *Nieves* exception at the motion to dismiss stage. *See, e.g.*, *Brown v. City of Albion, Mich.*, 136 F.4th 331, 341-42 (6th Cir. 2025) (finding that an allegation about law enforcement never "criminally prosecut[ing] anyone in the entire history of the ordinance" failed to meet the *Nieves* exception); *Falcone v. Dickstein*, 92 F.4th 193, 211 (3d Cir. 2024) (finding that the plaintiff's allegations that "people similarly situated as [her] were not arrested for attending board meetings unmasked when they were not necessarily long-standing anti-mask protestors for children in schools" was conclusory and did not meet the *Nieves* exception); *Thompson v. McGehee*, 761 F. Supp. 3d 937, 946 (N.D. Tex. 2025) (finding that the plaintiff's allegations that the police department "never before enforced the non-violent, misdemeanor statute under which [the] [p]laintiff was arrested" and that law enforcement failed to arrest an individual similarly

situated to the plaintiff failed to meet the *Nieves* exception); *Cuff v. Zee*, Civ. No. 23-22823, 2024 WL 5074728, at *6 (D.N.J. Dec. 10, 2024) (finding that the plaintiff's assertions that the defendants "treated him differently from similarly-situated persons by investigating and arresting him" without an explanation failed to meet the *Nieves* exception); *Eravi v. City Comm'n of Lawrence, Kan.*, Civ. No. 24-4042, 2025 WL 918201, at *9 n.2 (D. Kan. Mar. 26, 2025) (finding that the plaintiff's assertions were too conclusory to meet the *Nieves* exception).

Therefore, Counts 3 and 4 of the Complaint, as asserted against Welsh, Tweedie, Chimenti, and Chief DeCarolis, are dismissed.[9]

### C. Fourth Amendment and Malicious Prosecution

Chief DeCarolis asserts that Counts 5 and 6 (violations of the Fourth Amendment and NJCRA) and Count 9 (malicious prosecution) should be dismissed because he had probable cause to arrest and file charges against Plaintiff. (*See* ECF No. 3-2 at 10.)

The Court construes Count 5 and 6 as counts asserting claims for unlawful or false arrest. To bring a claim for unlawful or false arrest, a plaintiff must establish "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012).

"To prove malicious prosecution under § 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiffs favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing a plaintiff to justice; and (5) the plaintiff suffered deprivation of

---

[9]     The Court need not address whether probable cause existed to arrest Plaintiff, as Plaintiff's sole argument as to probable cause relates to the *Nieves* exception, (*see* ECF No. 4 at 13, 17-21), which only applies in "circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 587 U.S. at 406.

liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) (citation omitted).

Because Plaintiff does not challenge probable cause beyond his argument under *Nieves*, the Court concludes that for purposes of this Motion, probable cause existed to arrest and prosecute Plaintiff.[10]  (*See* ECF No. 4 at 13, 17-21.)  Indeed, the Complaint alleges that the judge found probable cause for Plaintiff's arrest.  (ECF No. 1 ¶ 90.)  Therefore, Counts 5, 6, and 9, as asserted against Chief DeCarolis are dismissed.

### D.  Qualified Immunity

Finally, Chief DeCarolis asserts that he is entitled to qualified immunity, and therefore all counts asserted against him must be dismissed.  As outlined above, the Court already dismissed Counts 3 through 6, and 9 as asserted against Chief DeCarolis.  Therefore, the Court need only consider Chief DeCarolis' qualified immunity argument as it relates to Counts 7 and 8 (substantive due process violations).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "When properly applied,

---

[10]    The Court also notes that even if the *Nieves* exception applied to Plaintiff's First Amendment retaliation claims (Counts 3 and 4), Plaintiff would still need to show an absence of probable cause for his unlawful or false arrest and malicious prosecution claims (Counts 5, 6, and 9) because the *Nieves* exception only applies to First Amendment retaliation claims.  *See Somers v. Devine*, 132 F.4th 689, 697 (4th Cir. 2025) (distinguishing between retaliatory arrest, unlawful arrest, and malicious prosecution); *Nigro v. City of N.Y.*, Civ. No. 19-2369, 2020 WL 5503539, at *3-4 (S.D.N.Y. Feb. 21, 2020) (granting a motion to dismiss a false arrest claim on the grounds that probable cause to arrest the plaintiff existed but also noting that the plaintiff's "retaliatory arrest claim would seem to fall squarely within the *Nieves* exception"); *see also Gonzalez*, 602 U.S. at 673 (Alito, J., concurring) ("*Nieves* applies to all retaliatory-arrest claims brought under § 1983.").

[qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Schneyder v. Smith*, 653 F.3d 313, 331 (3d Cir. 2011) (internal quotations and citations omitted).  Moreover, "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.  Qualified immunity aims to resolve "insubstantial claims" against government officials prior to discovery.  *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987).

"At the motion-to-dismiss stage, courts evaluate qualified immunity for a constitutional claim by examining (i) whether the complaint contains plausible allegations of a constitutional violation and (ii) whether the asserted constitutional right is clearly established." *Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir. 2021).  The questions may be answered in either order. *Pearson*, 555 U.S. at 242.

"The Due Process Clause provides that a state shall not 'deprive any person of life, liberty, or property, without due process of law." *Morrow v. Balaski*, 719 F.3d 160, 166 (3d Cir. 2013) (quoting U.S. Const. amend. XIV, § 1).  "[T]he substantive component of due process[ ] . . . 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)) (citation modified).  "To establish a substantive due process violation under the Fourteenth Amendment, a plaintiff must demonstrate that a defendant engaged in conduct that 'shocks the conscience.'" *Muraveva v. City of Wildwood*, Civ. No. 17-916, 2018 WL 6617266, at *7 (D.N.J. Dec. 18, 2018).

Here, the Court finds that Plaintiff has failed to state a plausible substantive due process violation against Chief DeCarolis.  Plaintiff's substantive due process claims against Chief

DeCarolis stem from Plaintiff's arrest and prosecution.  (*See* ECF No. 1.)  But as the Supreme Court has recognized, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citation modified).

Courts in this district have repeatedly interpreted *Albright* to bar recovery under the Fourteenth Amendment for conduct that would fall within the scope of other amendments, such as the First Amendment and Fourth Amendment.  *See, e.g.*, *Catalano v. City of Trenton*, Civ. No. 18-11646, 2019 WL 2315092, at *9 (D.N.J. May 31, 2019) (dismissing Fourteenth Amendment claims when the proper source of constitutional protection for unlawful arrest is the Fourth Amendment); *Newton v. Greenwich Twp.*, Civ. No. 12-238, 2012 WL 3715947, at *4 (D.N.J. Aug. 27, 2012) (noting that "[b]ecause . . . [the] [p]laintiffs' First Amendment claim fails, [the] [p]laintiffs have no federal substantive due process claim"); *Ingliema v. Town of Hampton*, Civ. No. 05-3497, 2007 WL 2908222, at *4-5 (D.N.J. Oct. 1, 2007) (finding that even though the plaintiff failed to sufficiently allege a Fourth Amendment violation, the plaintiff was barred from asserting a substantive due process violation under the Fourteenth Amendment because the "explicit textual source of constitutional protection" was the Fourth Amendment); *Combs v. Borough of Avalon*, Civ. No. 05-5904, 2007 WL 401905, at *2 (D.N.J. Feb. 1, 2007) ("[T]here is no substantive due process right in being free from prosecution without probable cause, and substantive due process may not furnish the constitutional peg on which to hang such a tort." (citation modified)).  The Court will do the same here and not expand the concept of substantive due process.  *See Albright*, 510 U.S. at 271-72 (noting that "[t]he protections of substantive due

process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity").

Therefore, because Plaintiff has failed to state a plausible substantive due process violation, Chief DeCarolis is entitled to qualified immunity on Counts 7 and 8.

## IV.    CONCLUSION

For the reasons stated above, and for other good cause shown, Defendants' Motion to Dismiss (ECF No. 3) is **GRANTED**. Plaintiff shall have thirty (30) days to file an amended complaint in accordance with Local Rule 15.1(b), to the extent he can cure the deficiencies cited herein. Failure to file an amended complaint within that time will render the dismissal final. *See Mann v. A.O. Smith Corp.*, Civ. No. 21-2361, 2023 WL 2344225, at *2 (3d Cir. Mar. 3, 2023) ("A district court's dismissal without prejudice for failure to state a claim is converted into a dismissal with prejudice if plaintiff 'declar[es] his intention to stand on his complaint' by failing to timely amend it. . . ."); *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 279 (3d Cir. 2016) ("When that 30-day period expired, the District Court's decision became final.") An appropriate Order follows.

Dated: July _10_, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE